## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
## LAFAYETTE DIVISION

| | |
|---|---|
| SERGIO GROBLER, derivatively on Behalf of INOTIV, INC., <br><br>    *Plaintiff*, <br>  v. <br>ROBERT W. LEASURE; BETH A. TAYLOR; GREGORY C. DAVIS; R. MATTHEW NEFF; RICHARD A. JOHNSON; JOHN E. SAGARTZ; NIGEL BROWN; and SCOTT CRAGG, <br><br>    *Defendants*, <br>  and <br>INOTIV, INC., <br><br>    *Nominal Defendant.* | Case No. 4:22-cv-00064-PPS-JPK |
| WILLIAM NOBLE BURKHART, Derivatively on Behalf of Nominal Defendant INOTIV, INC., <br><br>    *Plaintiff*, <br>  v. <br>ROBERT W. LEASURE; BETH A. TAYLOR; GREGORY C. DAVIS; R. MATTHEW NEFF; RICHARD A. JOHNSON; JOHN E. SAGARTZ; NIGEL BROWN; and SCOTT CRAGG, <br><br>    *Defendants*, <br>  and <br>INOTIV, INC., <br><br>    *Nominal Defendant.* | Case No. 4:23-cv-00003-PPS-JPK |

## **OPINION AND ORDER**

This opinion and order is entered in the following shareholder derivative actions:

(1) *Grobler v. Leasure,* Case No. 4:22-cv-00064-PPS-JPK (the *Grobler* Derivative Action); and

(2) *Burkhart v. Leasure*, Case No. 4:23-cv-00003-PPS-JPK (the *Burkhart* Derivative Action). The

*Grobler* Derivative Action was filed by Plaintiff Sergio Grobler derivatively on behalf of Inotiv, Inc., on September 9, 2022. The *Burkhart* Derivative Action was filed by Plaintiff William Noble Burkhart derivatively on behalf of Nominal Defendant Inotiv, Inc., on January 4, 2023. The defendants in both suits are the same: Robert W. Leasure, Beth A. Taylor, Gregory C. Davis, R. Matthew Neff, Richard A. Johnson, John E. Sagartz, Nigel Brown, and Scott Cragg (collectively the Individual Defendants), and Nominal Defendant Inotiv, Inc. (hereinafter, "Inotiv" or "the Company"). The *Grobler* Derivative Action is currently stayed pursuant to an agreement of the parties. *See Grobler* Derivative Action, Dkt. #10 (Order dated Nov. 15, 2022). The Court temporarily lifts the stay for purposes of this opinion and order and the related filings of the parties.

Currently before the Court is the "Joint Motion Consolidating Actions And Appointing Co-Lead Counsel" (hereinafter, the "Motion" or "Motion to Consolidate/Appoint Lead Counsel"), filed in the *Grobler* Derivative Action by all parties to both actions. *See id.,* Dkt. #13 (filed Jan. 12, 2013).[1] Plaintiffs Grobler and Burkhart also jointly filed in both cases a "Notice of Non-Opposition To The Joint Motion Consolidating Actions And Appointing Co-Lead Counsel." *See id.*, Dkt. #14 (filed Feb. 15, 2023); *Burkhart* Derivative Action, Dkt. #4 (filed Feb. 15, 2023). For the reasons that follow, the Motion to Consolidate/Appoint Lead Counsel in the *Grobler* Derivative Action is denied without prejudice.

---

[1] The Local Rules state that "[a] party seeking to consolidate two or more cases must file: (1) a motion in the case with the earliest docket number; and (2) a notice of the motion in all the other cases." N.D. Local R. 42-2(a)(2). Consistent with this rule, the Motion to Consolidate was filed in Case No. 4:22-cv-00064-PPS-JPK, which has the earliest docket number.

2

## BACKGROUND

1. **The Securities Class Action**

On June 23, 2022, Grobler filed a "Class Action Complaint For Violations of Securities Laws" on behalf of a putative class of investors defined as all persons or entities who purchased or otherwise acquired publicly traded securities of the Company between September 21, 2021 and June 13, 2022. *See In re Inotiv, Inc. Sec. Litig.,* Cause No. 4:22-cv-45-PPS-JEM, Dkt. #1 (N.D. Ind.) (hereinafter "the Securities Class Action"). The Securities Class Action complaint sought to recover damages under the Securities Exchange Act (the "Exchange Act") allegedly caused by Inotiv's Chief Executive Officer, President, and Director, Robert W. Leasure, and its Chief Financial Officer and Vice President of Finance, Beth A. Taylor. The complaint alleged that Leasure and Taylor made various false or misleading statements or omissions concerning Inotiv's business, operations, and prospects, in connection with the Company's acquisition of Envigo RMS, LLC, and the "widespread and flagrant" violations of the Animal Welfare Act that were later discovered at its Cumberland, Virginia facility. *See id.* ¶¶ 16–26. Leasure's and Taylor's statements or omissions allegedly caused investors who purchased Inotiv securities in the relevant time period to suffer damages when the true details about the Cumberland facility emerged in the market, triggering a diminution in the value of the Company's publicly traded shares. *See id.,* ¶¶ 27–32.

On the same day the Securities Class Action complaint was filed, Grobler's counsel issued an early notice pursuant to the Private Securities Litigation Reform Act of 1995 (PSLRA), 15 U.S.C. § 78u–4(a)(3)(A)(i). *See* Securities Class Action, Dkt. #18-2. Publication of the required notice alerted other members of the putative class to the opportunity to seek appointment as lead plaintiff in the litigation. On August 22, 2022, Grobler and four other interested parties filed

3

motions seeking appointment as lead plaintiff and approval of their proposed class counsel. *See id.*, Dkt. ##14, 17, 20, 22, 26. Shortly thereafter, four of the five putative class members seeking lead plaintiff appointment, including Grobler, withdrew their motions in deference to the motion filed by the fifth interested party, the Oklahoma Police Pension and Retirement System, which asserted that it has "the largest financial interest in this action," having sustained losses of approximately $424,178 on its investment in 71,189 shares of Inotiv common stock. *Id.*, Dkt. #34 at 2. Based on a statutory presumption that the party that has the largest financial interest should be appointed lead plaintiff in a securities class action, District Court Judge Philip P. Simon, who is currently presiding over all three related matters, entered an order on September 12, 2022 granting the motion of the Oklahoma Police Pension and Retirement System to serve as Lead Plaintiff in the Securities Class Action and its counsel to serve as liaison counsel for the purported class, and denying the competing motions as moot. *See id.,* Dkt. #37.

  **2.** ***Grobler* Derivative Action**

  Grobler's notice formally withdrawing his motion to serve as lead plaintiff and approval of lead counsel in the Securities Class Action, filed on September 6, 2022, states that "[t]his withdrawal shall have no impact on Movant's membership in the proposed class, Movant's right to share in any recovery obtained for the benefit of class members, and Movant's ability to serve as a representative party." *Id.,* Dkt. #33. On September 8, 2022, Grobler filed a second notice voluntarily dismissing his claims in the Securities Class Action without prejudice pursuant to Fed. R. Civ. P. 41(a), noting that the class claims "will continue to be pursued by the lead plaintiff appointed pursuant to the PSLRA." *Id.* Dkt. #36. The next day, on September 9, 2022, Grobler filed the complaint in the *Grobler* Derivative Action. Grobler's complaint alleges shareholder derivative claims on behalf of Inotiv (First through Fourth Claims), including breach of fiduciary

4

duties, gross mismanagement, abuse of control, and waste of corporate assets, against the Individual Defendants, who are corporate officers and directors of Inotiv. *See Grobler* Derivative Action, Dkt. #1. In addition, the complaint includes one count (Fifth Claim) in which Grobler alleges violations of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1) and Rule 14a-9, 17 C.F.R. § 240.14a-9. The complaint alleges federal court jurisdiction based on diversity of citizenship. As an alternative basis for jurisdiction, the complaint alleges federal question jurisdiction over the Fifth Claim and supplemental jurisdiction over the First through Fourth Claims.

### 3. Stay of the *Grobler* Derivative Action

On November 4, 2022, counsel for Grobler, together with counsel for Inotiv and the Individual Defendants, filed a joint motion in the *Grobler* Derivative Action requesting that the Court stay the action pending a ruling on an anticipated motion to dismiss in the Securities Class Action. *See Grobler* Derivative Action, Dkt. #8. The joint motion to stay asserted that there was substantial overlap between the facts and circumstances alleged in the *Grobler* Derivative Action and the Securities Class Action, including some of the same defendants named in each action, and that the parties agreed that a decision on a motion to dismiss in the Securities Class Action could have important implications for the efficient prosecution of the *Grobler* Derivative Action. In light of the similarities between the *Grobler* Derivative Action and the Securities Class Action as well as the anticipated motion to dismiss in the Securities Class Action, the parties argued that, to conserve judicial resources as well as the resources of the parties, all proceedings and deadlines in the *Grobler* Derivative Action including discovery and Defendants' obligation to move, answer, or respond to the complaint should be stayed pending the filing of an amended class action complaint by the newly appointed Lead Plaintiff in the Securities Class Action and resolution of

an anticipated motion to dismiss that amended complaint. Pursuant to these representations, the Court entered an order staying the *Grobler* Derivative Action on November 15, 2022. *Id.* Dkt. #10.

### 4. *Burkhart* Derivative Action

On January 4, 2023, Burkhart filed a separate derivative action on behalf of Inotiv raising allegations similar to those made in the *Grobler* Derivative Action. *See Burkhart* Derivative Action, Dkt. #1. Count I of Burkhart's complaint alleges a claim for breach of fiduciary duty. Count II of the complaint alleges a claim for contribution or indemnification against Defendants Leasure and Taylor for damages the Company may become liable to pay for violating Section 10(b) and 21D of the Exchange Act. And Count III of the complaint, like the Fifth Claim in Grobler's derivative complaint, alleges a violation of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1) and Rule 14a-9, 17 C.F.R. § 240.14a-9. Unlike Grobler, Burkhart does not allege federal jurisdiction based on diversity of citizenship. Instead, the only basis for federal jurisdiction alleged in the *Burkhart* Derivative Action is federal question jurisdiction over the Section 14(a)/Rule 14a-9 violation alleged in Count III and supplemental jurisdiction over Counts I and II.

### 5. Motion To Consolidate/Appoint Lead Counsel

On January 12, 2022, the parties filed the Motion to Consolidate/Appoint Lead Counsel presently under consideration. The Motion requests that the stay of proceedings in the *Grobler* Derivative Action be temporarily lifted for the limited purpose of the filing of and ruling on the Motion, and that the Court enter an order consolidating the *Grobler* and *Burkhart* Derivative Actions for all purposes, including pretrial proceedings, trial, and appeal. The Motion also requests that the Court appoint the Rosen Law Firm, P.A. and Glancy Prongay & Murray LLP as co-lead counsel for the plaintiffs in the consolidated action and that Williams & Piatt, LLC be appointed to serve as liaison counsel for the plaintiffs. While Defendants join in the Motion's request for

consolidation, they take no position on its request for appointment of co-lead counsel and/or liaison counsel.

## DISCUSSION

Federal Rule of Civil Procedure 42(a) allows a district court to consolidate two or more actions that involve "a common question of law or fact." Fed. R. Civ. P. 42(a)(2). "The primary purpose of consolidation is to promote convenience and judicial economy. The decision to consolidate under Rule 42 is within the discretion of the trial judge. When there are two cases that grow out of the same set of facts, have the same lawyers and same parties, and are in the same court, it seems pretty obvious that concerns for judicial economy would strongly favor consolidation of the two cases." *Millman v. United Techs. Corp.*, Nos. 1:16-cv-312-PPS-SLC, 1:17-cv-28-PPS-LSC, 2017 WL 1165081, at *3 (N.D. Ind. Mar. 28, 2017) (internal quotation marks and citations omitted).

The Motion represents that the *Grobler* Derivative Action and the *Burkhart* Derivative Action contain substantially similar factual and legal contentions and that the administration of justice would be best served by consolidating the actions and appointing co-lead counsel as set forth in the Motion. Having reviewed the filings in both actions, the Court agrees that the two suits contain substantially similar factual and legal contentions, and that in certain respects, judicial economy would be served if both cases were actively being litigated (as opposed to being stayed in favor of the Securities Class Action). But the Court cannot say at this time whether the administration of justice would best be served by consolidating the actions because of concerns about whether the Court has subject matter jurisdiction over the actions and the possibility that the Court might have jurisdiction over one of the suits but not the other.

Congress has conferred original subject matter jurisdiction on Article III courts in "federal question" cases and controversies "arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331, and in "diversity of citizenship" cases between citizens of different states, 28 U.S.C. § 1332. Both Grobler and Burkhart allege that the Court has federal question jurisdiction over their complaints. But only Grobler alleges in the alternative that the Court has diversity jurisdiction as well.

### A.      Federal Question Jurisdiction

Derivative actions generally "involve only issues of state law and … can get into federal courts only by reason of diversity in citizenship of the parties." *Koster v. (Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 522 (1947); *see, e.g., Van Gelder v. Taylor*, 621 F. Supp. 613, 620 (N.D. Ill. 1985) ("Count 2 is a shareholder's derivative action. Subject matter jurisdiction is conferred upon the Court through diversity of citizenship."). Nevertheless, Grobler and Burkhart allege federal question jurisdiction based on Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a)(1) and Rule 14a-9, 17 C.F.R. § 240.14a-9.[2] Presumably, these allegations relate to the Fifth Claim in the *Grobler* Derivative Action and Count III in the *Burkhart* Derivative Action. If the Court has federal question jurisdiction over those claims, then supplemental jurisdiction could exist over the

---

[2] The text of Section 14(a) states that "[i]t shall be unlawful for any person ... to solicit or permit the use of his name to solicit any proxy" in violation of an SEC regulation. 15 U.S.C. § 78n(a)(1); *see Haas v. Wieboldt Stores, Inc.*, 725 F.2d 71, 73 (7th Cir. 1984). Rule 14a–9, in turn, prohibits "any statement" that is false or misleading as "to any material fact" at the time that it was made. 17 C.F.R. § 240.14a–9(a). "There are four basic elements of a claim under Section 14(a) ... (i) the proxy statement contains a material misrepresentation or omission; (ii) the defendants were at least negligent; (iii) the misrepresentations or omissions caused the loss of which the plaintiff complains; and (iv) the proxy statement was an essential link in the completion of the transaction at issue." *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 868 (S.D. Ohio 2013) (quoting *Lane v. Page*, 727 F. Supp. 2d 1214, 1227–28 (D.N.M. 2010)).

remaining state law derivative claims in both complaints.³ The problem at least at this junction, however, is that the viability of Grobler's and Burkhart's derivative Section 14(a)/Rule 14a-9 securities claims seems uncertain.⁴ If the cases are consolidated and the securities law claims then

---

³ The complaints plausibly allege that the state law derivative claims are related to the federal securities law claim such that the Court could assert supplemental jurisdiction over the state law derivative claims if the federal securities law claim is properly a part of the lawsuit. *See* 28 U.S.C. § 1367(a) (a federal court *may* exercise supplemental jurisdiction over claims that "are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution") (emphasis added).

⁴ The Court acknowledges the Seventh Circuit's statement in *Ray v. Karris*, 780 F.2d 636, 641 (7th Cir. 1985), that "[t]he right of a shareholder to sue derivatively under Rule 10b-5 [and Rule 14a-9] on behalf of the corporation was firmly established in this circuit by *Dasho v. Susquehanna Corp.*, 380 F.2d 262 (7th Cir.), *cert. denied*, 389 U.S. 977 (1967)." *See also Li v. Colo. Reg'l Ctr. I, LLC,* No. 21-1232, No. 21-1253, 2022 WL 5320135, at *17 n. 28 (10th Cir. Oct. 7, 2022) ("The case law indicates that investors may pursue derivative federal securities-law claims against a corporate manager … for alleged harm to the corporation[.]"), *cert. petition filed* Jan. 23, 2023; *Frankel v. Slotkin*, 984 F.2d 1328, 1332-33 (2nd Cir. 1993) (holding that the plaintiff could maintain derivative federal securities-law claim against majority shareholder by showing damage to the corporation); *Hill v. Vanderbilt Cap. Advisors, LLC*, 834 F. Supp. 2d 1228, 1268 (D.N.M. 2011) (other circuits have established "that rule 10b–5 actions may be pursued derivatively"). But the Seventh Circuit also has said that "there is no definitive statement that all breaches of fiduciary duty are actionable in … derivative actions," and that "the law in this circuit with regard to this type of derivative suit requires a case by case analysis based on the principles underlying the securities law." *Ray,* 780 F.2d at 642; *see, e.g., Panter v. Marshall Field & Co.,* 646 F.2d 271, 288 (7th Cir. 1981) ("courts have consistently held that since a shareholder cannot recover under 10b-5 for a breach of fiduciary duty, neither can he 'bootstrap' such a claim into a federal securities action by alleging that the disclosure philosophy of the statute obligates defendants to reveal either the culpability of their activities, or their impure motives for entering the allegedly improper transaction"). To determine whether a claim is derivative or direct, the court "must preliminarily determine if [it] state[s] an injury to the plaintiff upon an individual claim as distinguished from an injury that indirectly affects shareholders or affects them as a whole." *Smith,* 969 F. Supp. 2d at 863. In *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Securities Act (ERISA) Litigation*, 757 F. Supp. 2d 260 (S.D.N.Y. 2010), the court held that both direct and derivative Section 14(a) actions could proceed because there was at least a potential that the defendants' Section 14(a) violations caused injury to the "shareholders qua shareholders" that was separate from an injury to the corporation. *Id.* at 291; *see also id.* at 292 ("[M]aterial omissions from a proxy statement could directly injure the corporation as well as the corporation's shareholders."). Still, it could be argued that the allegations regarding violations of Section 14(a) in the complaints in the two cases before the Court are conclusory, and "conclusory allegations that various statutory provisions have been breached are of no consequence if unsupported by proper factual allegations." *Jennings v. Emry*, 910 F.2d 1434, 1438 (7th Cir. 1990); *see also*

get dismissed, jurisdiction over the consolidated action will turn on whether there is diversity jurisdiction.

A similar situation was before the court in *In re Oclaro, Inc. Derivative Litigation*, No. C-11-3176 EMC, 2011 WL 4345099 (N.D. Cal. Sept. 14, 2011). There the court declined to consolidate a shareholder derivative lawsuit in which the plaintiff conceded there was no diversity jurisdiction with other shareholder derivative suits involving the same underlying facts for which diversity jurisdiction existed. *Id.* at *1-2. The Court reasoned that the non-diverse plaintiff "claim[ed] subject matter jurisdiction based on federal question jurisdiction alone, and there appear[ed] to be insufficient allegations supporting the federal securities claim." *Id.* at *2. If the federal securities derivative claim were to be dismissed, the court "would appear to have no subject matter jurisdiction over [the non-diverse plaintiff's] case." *Id.* The court concluded that, "[i]n this circumstance, the propriety of consolidation of [the non-diverse plaintiff's shareholder derivative] case with the other shareholder derivative lawsuits [was] questionable" because it "would destroy diversity jurisdiction" for the consolidated suit. *Id.*

Similarly, here, Burkhart does not allege diversity jurisdiction exists over his complaint, while Grobler does. It might make sense to consolidate for hearing and resolution the issue whether Burkhart and Grobler have stated a viable derivative claim for violation of Rule 14a-9. *See* Fed. R. Civ. P. 42(a)(1) ("If actions before the court involve a common question of law or fact, the court may … join for hearing … any or all matters at issue in the actions …."). But that question can be decided when and if Defendants raise the viability issue by filing a motion to dismiss. In addition,

---

*Kuebler v. Vectren Corp.,* 13 F.4th 631, 647 (7th Cir. 2021) ("Because plaintiffs did not allege economic loss, the district court correctly determined that they failed to plead loss causation."); *Dasho v. Susquehanna Corp.*, 461 F.2d 11, 30-31 (7th Cir. 1972) (where plaintiffs are seeking damages, they must allege and prove an actual pecuniary loss to the corporation).

as discussed below, Grobler's allegations of diversity are currently in question. If it turns out that he, like Burkhart, is also dependent on the viability of his Rule 14a-9 claim for federal court jurisdiction, then consolidation of the two cases can be addressed at that time as well.

### B.       Diversity Jurisdiction

If Grobler intends to rely on diversity jurisdiction to remain in federal court, then it will be necessary for him to clarify the jurisdictional allegations in his complaint.

For the Court to have diversity jurisdiction, no defendant may be a citizen of the same state as any plaintiff ("the complete diversity rule"), and the amount in controversy must exceed $75,000. *See* 28 U.S.C. § 1332(a). Whether federal diversity jurisdiction exists is determined by examining the facts at the time the action is commenced. *Altom Transp., Inc. v. Westchester Fire Ins. Co.*, 823 F.3d 416, 420 (7th Cir. 2016). The party seeking to invoke diversity jurisdiction must allege facts from which the court may plausibly infer that the requirements for diversity jurisdiction are met. *See Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015) ("when evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly– Iqbal*'s 'plausibility' requirement").

####       1.       Complete Diversity

As an initial matter, "courts do not consider the citizenship of individual shareholders (other than a named party) in a derivative suit when determining whether there is diversity jurisdiction." *Beck v. Dobrowski*, 559 F.3d 680, 687 (7th Cir. 2009). Grobler alleges that he is a resident of Florida. "But residence may or may not demonstrate citizenship, which depends on domicile—that is to say, the state in which a person intends to live over the long run. An allegation of 'residence' is therefore deficient." *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012). If Grobler intends to rely on diversity as the basis for federal court jurisdiction, he must

allege his citizenship based on where he intends to live over the long run, not based on his residency.

In addition, Inotiv is also listed on the "plaintiff" side of the case caption of Grobler's complaint. For purposes of assessing whether the complete diversity rule is satisfied, "the general rule is that the corporation in a derivative suit should be aligned as a plaintiff." *Obstfeld v. Schwartz*, 621 F. Supp. 2d 87, 93–94 (S.D.N.Y. 2008) (internal quotation marks and citation omitted). "[T]he plaintiff stockholder in a stockholder's derivative suit is at best the nominal plaintiff. The corporation is the real party in interest, regardless of the fact that the corporate management has failed to pursue the action. However, the corporation is initially named as a defendant to insure the presence of the corporation as an indispensable party. Once joined and present before the court, the corporation is then realigned, if necessary, according to its real interests. The corporation should be realigned as a plaintiff in a stockholder's derivative suit when it is the real party in interest which stands to benefit from a successful suit." *Van Gelder*, 621 F. Supp. at 620 (internal quotation marks and citations omitted). Applying the general rule here could destroy diversity jurisdiction, as the complaint suggests that both Inotiv and several of the Individual Defendants are Indiana citizens (as discussed further below).

But there is an exception to the general rule of aligning the corporation as a plaintiff in a derivative suit for when "the corporate management is 'antagonistic' to the plaintiff shareholder." *Id.*; *see Tessari v. Herald,* 207 F. Supp. 432, 435 (N.D. Ind. 1962). "A corporation is controlled by its management, and when the management opposes the derivative suit the corporation is treated as a defendant rather than as a plaintiff for purposes of determining whether there is diversity jurisdiction." *Beck*, 559 F.3d at 687 (citing *Smith v. Sperling*, 354 U.S. 91, 95 (1957) ("There is antagonism whenever the management is aligned against the stockholder and defends a course of

conduct which he attacks.")). "Re-aligning a corporation as a defendant, however, is only proper when "[the] corporation is *actively* antagonistic to plaintiff's interests." *Obstfeld*, 621 F. Supp. 2d at 93-94 (emphasis added) (quoting *ZB Holdings, Inc. v. White*, 144 F.R.D. 42, 45 (S.D.N.Y. 1992) (citing *Duffey v. Wheeler*, 820 F.2d 1161, 1163 (11th Cir. 1987))). "Thus, 'antagonism has generally not been found where the corporation does not, would not, or cannot express opposition to the initiation of the lawsuit.'" *Id.* (quoting *Netwolves Corp. v. Sullivan*, No. 00 CIV. 8943(AGS), 00 CIV. 9628(AGS), 2001 WL 492463, at *6 (S.D.N.Y. May 9, 2001)); *see, e.g., Lewis v. Odell*, 503 F.2d 445, 446 (2d Cir. 1974) (corporation will not be realigned as a defendant in shareholder derivative action where it had retained neutrality in its responses to the complaint). The court "determine[s] the issue of antagonism on the face of the pleadings and by the nature of the controversy." *Sperling*, 354 U.S. at 96.

"*Smith v. Sperling* adopts a mechanical rule: the unwilling corporation is aligned as a defendant. Sometimes this creates diversity (as in *Sperling*), sometimes it defeats diversity." *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 382 (7th Cir. 1990). Here, it appears that if the *Sperling* rule applies, it might create diversity. The *Sperling* rule may apply because the complaint alleges that demand on the corporation would be futile. *Grobler* Derivative Action, Dkt. #1, ¶¶ 116-136. It is insufficient to make overly broad and conclusory allegations that demand on a corporation to institute action would be futile. *See Abrams v. Mayflower Invs., Inc.*, 62 F.R.D. 361, 368 (N.D. Ill. 1974) (allegations in complaint regarding futility of demand were "overly broad and conclusory and d[id] not properly comply with the requirement of Rule 23.1 that the plaintiff present verified allegations of facts which justify the allegation that it would be futile to make the demand"). But the Court will assume that Grobler's allegations regarding futility of demand are detailed enough to plausibly allege the required antagonism for Inotiv to be aligned as a defendant

13

for purposes of diversity jurisdiction. Thus, the "defendants" side of the case includes Inotiv and the Individual Defendants.

A corporation is deemed a citizen of both the state of incorporation and the state of its principal place of business. *See* 28 U.S.C. § 1332(c)(1). The principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010). "[I]n cases with corporate parties, it is necessary to allege both the state of incorporation and the state of the principal place of business, even if they are one and the same." *Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 628 (7th Cir. 1998). Grobler alleges that Inotiv is an Indiana corporation "with its head office in Lafayette, Indiana." *Grobler* Derivative Action, Dkt. 1 ¶ 25. If Grobler intends to rely on diversity as the basis for federal court jurisdiction, he should clarify whether his allegations mean that Inotiv is incorporated in Indiana and has its principal place of business there.[5]

For the Individual Defendants, the complaint alleges that Defendants Leasure, Taylor, Davis, and Neff are residents of Indiana; Defendant Johnson is a resident of Michigan; Defendant Sagartz is a resident of Missouri; Defendant Brown is a resident of New Jersey; and Defendant Cragg is a resident of New York. Like Grobler's allegations regarding his own citizenship, these allegations are deficient because the citizenship of an individual turns on domicile, not residence. *Heinen*, 671 F.3d at 670. Accordingly, if Grobler intends to rely on diversity as the basis for federal

---

[5] The term "Indiana corporation" could be construed as conclusory, and the place where the company maintains its "head office" might be, but is not necessarily, the same place as a company's principal place of business. If these were the only ambiguities in Grobler's jurisdictional allegations, the Court might not request supplementation. But since Grobler must supplement his jurisdictional allegations in other respects it makes sense to have him clarify these allegations as well.

court jurisdiction, he must allege the citizenship of the Individual Defendants based on their domicile.

Finally, the Seventh Circuit "treat[s] the amount-in-controversy threshold as a 'pleading requirement.'" *Ware v. Best Buy Stores, L.P.*, 6 F.4th 726, 732 (7th Cir. 2021) (quoting *Blomberg v. Serv. Corp., Int'l*, 639 F.3d 761, 763 (7th Cir. 2011) (reversing district court's remand order where defendant told a plausible story about how the amount in controversy exceeded the statutory minimum), quoting *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008)). "Once the proponent of federal jurisdiction has explained plausibly how the stakes exceed" the amount-in-controversy threshold of a jurisdictional statute, "then the case belongs in federal court unless it is legally impossible for the plaintiff to recover that much." *Ware*, 6 F.4th at 732 (quoting *Spivey*, 528 F.3d at 986).

"In a stockholders' derivative action the corporation, not the complaining shareholder, is the real party in interest, and the jurisdictional amount is measured by the damage sustained by the corporation." *Bernstein v. Levinson*, 437 F.2d 756, 757 (4th Cir. 1971) (citing *Koster*, 330 U.S. at 522)); *see also Felzen v. Andreas,* 134 F.3d 873, 875 (7th Cir. 1998) ("A derivative suit is brought by an investor in the *corporation's* (not the investor's) right to recover for injury to the corporation. The corporation obtains the damages; the investor-plaintiffs just get the ball rolling after the fashion of a *qui tam* action.") (emphasis added; internal citations omitted), *aff'd sub nom. Cal. Pub. Emps. Ret. Sys. v. Felzen,* 525 U.S. 315 (1999); *Overwell Harvest Ltd. v. Widerhorn*, No. 17 C 6086, 2019 WL 4278181, at *7 (N.D. Ill. Sept. 9, 2019) ("the proper measure of damages [in a shareholder derivative action] is the harm to the company, not to the individual shareholders").

Grobler need only plausibly allege damage to Inotiv of more than $75,000, but he has not done so. Instead, his complaint contains the conclusory allegation that "the amount in controversy

exceeds the sum or value of $75,000, exclusive of interest and costs." Conclusory and boilerplate allegations are not sufficient to satisfy the plausibility pleading standard. *See Cellucci v. O'Leary*, No. 19-CV-2752 (VEC), 2021 WL 242806, at *2 (S.D.N.Y. Jan. 25, 2021) (citing cases). Nevertheless, the complaint contains some factual allegations suggesting that the damages to the corporation might be in excess of the $75,000 minimum:

> 110. As a direct and proximate result of the Individual Defendants' conduct, Inotiv has expended and will continue to expend significant sums of money.
>
> 111. Such expenditures include, but are not limited to, legal fees associated with the aforementioned Securities Class Action filed against the Company for violations of the federal securities laws and the Envigo Action filed by the U.S. Department of Justice including previous investigations by federal and state law enforcement agents, and enforcement actions. Inotiv will incur additional expenditures and economic harm due to facility closures, business losses associated with the Company's Merger, and amounts paid to outside lawyers, accountants, and investigators in connection with internal investigations, and payments associated with the aforementioned issues.
>
> 112. As a direct and proximate result of the Individual Defendants' conduct, Inotiv has suffered and will continue to suffer a loss of reputation and goodwill, ….

*Grobler* Derivative Action, Dkt. #1, ¶¶ 110-112. Setting aside whether legal fees, closures, and other expenditures, which are only anticipated and have not yet occurred, are sufficient to state a present injury to the corporation, Grobler's complaint does not sufficiently identify the injuries for which the complaint seeks to recover together with a plausible monetary amount associated with those injuries. Accordingly, if Grobler intends to rely on diversity as the basis for federal court jurisdiction, he must supplement his allegations regarding the nature of the injuries suffered by Inotiv and provide some quantification of those injuries sufficient to meet the jurisdictional amount in controversy pleading requirement. *See, e.g., Sweeney v. Harbin Elec., Inc.,* No. 3:10-CV-00685-RCJ-VPC, 2011 WL 3236114, at *3 (D. Nev. July 27, 2011) ("Plaintiff … need only allege damage

to [the company] of more than $75,000. But he has not done so. He has simply alleged in conclusory fashion that the stock is worth more than $24 per share. … Plaintiff has not alleged what loss a $24 offer would cause to the company.").

### C. Appointment of Lead Counsel

Given the above discussion regarding uncertainties over the Court's jurisdiction, it is premature to make any decision regarding the appointment of lead counsel. The stay in the *Grobler* Derivative Action will be reinstated, and a stay may be entered in the *Burkhart* Derivative Action upon the filing of a joint motion to stay similar to the one filed in the *Grobler* Derivative Action. The propriety of consolidation and appointment of lead counsel will be addressed upon the lifting of the stay and after the jurisdictional basis of both derivative lawsuits are sufficiently pled and/or resolved.

### CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** as follows:

1. In *Grobler v. Leasure,* Case No. 4:22-cv-00064-PPS-JPK:

    a. The stay entered on November 15, 2022 [DE 10] is lifted for purposes of this order and related party filings.

    b. The Joint Motion Consolidating Actions And Appointing Co-Lead Counsel, **DE 13**, is **DENIED WITHOUT PREJUDICE**.

    c. The case is stayed on the same terms set forth in the Court's November 15, 2022 order [DE 10].

2. In *Burkhart v. Leasure*, Case No. 4:23-cv-00003-PPS-JPK:

    a. The parties are directed to meet and confer regarding the filing of a motion to stay.

      b.      After meeting and conferring, the parties shall either file an agreed motion to stay or request a telephonic status conference if they are unable to reach agreement regarding the stay.

The Clerk is directed to enter this opinion and order in both actions.

So ORDERED this 17th day of February, 2023.

                                                  s/ Joshua P. Kolar
                                                  MAGISTRATE JUDGE JOSHUA P. KOLAR
                                                  UNITED STATES DISTRICT COURT